**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**PATRICIA ANNE MILLER,
d/b/a POSH PETS,**

    Plaintiff,

v.                                                                **Civil Action No. 3:18-cv-25
(BAILEY)**

**TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA
and GOVERNOR INSURANCE AGENCY, INC.,**

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT GOVERNOR INSURANCE AGENCY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Currently pending before this Court is defendant Governor Insurance Agency, Inc.'s ("Governor") Motion to Dismiss for Failure to State a Claim [Doc. 24], filed on September 10, 2018. For the reasons set forth below, this Court denies Governor's Motion to Dismiss.

## BACKGROUND

Plaintiff filed a Complaint in the Circuit Court of Berkeley County on January 10, 2018 [Doc. 1-1]. Defendant Travelers Casualty Insurance Company of America ("Travelers") then removed this matter pursuant to 28 U.S.C. §§ 1332 and 1446 and invoked this Court's diversity jurisdiction [Doc. 1]. Once the case was in this Court, plaintiff later filed an Amended Complaint against Travelers and Governor [Doc. 19]. The Amended Complaint asserts the following.

Plaintiff Patricia Miller is a proprietor of a pet grooming and boarding business in Martinsburg, West Virginia. Plaintiff's business, Posh Pets, handled its grooming operations from an addition attached to the home located on the premises. The company handled its boarding operations from a separate, adjacent kennel on the premises. Plaintiff's business was insured under an insurance policy issued by Defendant Travelers that covered Businessowners Property and Commercial General Liability. The policy was in effect from March 18, 2017, through March 18, 2018. Governor was the agent for the placement of the policy and submitted plaintiff's application for insurance to Travelers.

On November 4, 2017, an accidental fire caused by electrical wiring occurred at Posh Pets. The fire began in the portion of the premises where the plaintiff's grooming operations were and spread to the other part of the home, which was attached to the grooming area. The fire caused substantial physical damage and interrupted plaintiff's business operations. Soon thereafter, plaintiff filed a claim with Travelers under the insurance policy.

The claim was assigned to Kenneth Engle, "Claim Professional" for Travelers, and plaintiff discussed the claim with Engle and Mark Beavers, Fire Investigator for Travelers, on November 6, 2017. The next day, Engle had discussions with representatives of Governor, including Christina Adkins, about the fire, the loss caused by the fire, and the application and underwriting process regarding the issuance of the insurance policy. Adkins advised Mr. Engle that "building coverage is not for detached building that house [sic.] kennels the building coverage is not for the grooming area attached to the house." [Doc. 19, ¶ 17]. The following day, after Engle completed his investigation, Travelers denied coverage for plaintiff's claim because "the damage occurred to a building not listed

in the Declarations and the business property damage was not located in or on a building listed on the Declaration [sic.], your policy does not provide coverage." [*Id.* at ¶ 18].

Because of the denial of coverage, plaintiff alleges that the property was not repaired, causing business interruption and past and future loss of income, more than $150,000 worth of past and future repair costs, substantial loss of personal property, and loss of income exceeding $58,000. Plaintiff also alleges additional damage that was caused when the water pipes froze and burst following denial of coverage.

The amended complaint alleges five counts: (i) declaratory relief/breach of contract; (ii) bad faith; (iii) Unfair Trade Practices Act ("UTPA"); (iv) intentional infliction of emotional distress; and (v) fraud. Governor filed a Motion to Dismiss Counts II and III [Doc. 24] on September 10, 2018. In support of its Motion to Dismiss, Governor argues that Counts II and III should be dismissed pursuant to F. R. Civ. P. 12(b)(6) for failure to state a plausible claim upon which relief can be granted because Governor is not an agent liable under the UTPA or bad faith claims [Doc. 24-1, p. 2]. In plaintiff's Response, plaintiff argues that Governor is liable [Doc. 36]. Governor did not file a Reply brief. The arguments made in Governor's Motion to Dismiss will be discussed more extensively below.

## LEGAL STANDARD

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most

3

favorable to the plaintiffs. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Id.* at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 1974.

## DISCUSSION

Governor moves to dismiss plaintiff's Amended Complaint, arguing that Governor is simply an insurance agency whose purpose is to simply sell insurance policies and not adjust or settle claims. Governor argues therefore, as a matter of law, plaintiff has not stated a plausible claim as to Counts II and III against Governor because Governor is not an agent liable to plaintiff under UTPA or common law bad faith claims. Plaintiff counters, arguing that Governor is liable as Travelers' agent because Governor was involved in the issuance of the insurance policy and with the claim after the accidental fire.

Taking the allegations in the Amended Complaint in the light most favorable to the plaintiff, there are sufficient facts to survive Governor's motion to dismiss. The plaintiff alleges a violation of the UTPA and common law bad faith claims. The UTPA is a statute that prohibits unfair and deceptive trade practices. W.Va. Code § 33-11-1, *et seq.*

4

Specifically, plaintiff alleges violations related to misrepresentations and unfair claim settlement practices. §§ 33-11-4(1) & 4(9). The main issue for this instant motion is whether Governor is covered by the UTPA.

The UTPA states that "[n]o person shall make, issue, circulate, or cause to be made, issued or circulated, any estimate, circular, statement, sales presentation, omission or comparison which . . . [m]isrepresents the benefits, advantages, conditions or terms of any insurance policy." § 33-11-4(1)(a). "Person" under the statute is defined as "any individual, company, insurer, . . . or any other legal entity, *including agents* and brokers." § 33-11-2(a) (emphasis added). Governor argues it is not an agent of Travelers, while plaintiff argues Governor is an agent liable under the UTPA.

Governor cites *Ayers v. Continental Casualty Company*, as support for its argument. 2006 WL 278540 (N.D. W.Va. Feb. 2, 2006) (Stamp, J.). In *Ayers*, plaintiffs brought claims under the UTPA against Continental Casualty Company ("CCC") and Allegheny Insurance Company, Inc. ("Allegheny"). *Id.* at *1. CCC moved to remand the case to state court based on a fraudulent joinder, and Allegheny moved to dismiss because Allegheny was not involved in the adjustment or settlement of plaintiffs' claims. *Id.* at *4. The plaintiffs' claim against Allegheny was that Allegheny "provided information regarding insurance coverage availability in the underlying case." *Id.* at *5. The Court found Allegheny was an "independent insurance agency" because its purpose was "to sell insurance policies to insurance consumers and not to adjust or settle claims." *Id.* at *4. Further, Allegheny did not adjust, settle, or control insurance claims on behalf of CCC and that Allegheny never had any contact with the plaintiffs. *Id.* at *6. Since the plaintiffs could not provide any evidence or offer any proof of direct communications, the Court found no

5

direct communication between Allegheny and plaintiffs. *Id.* Therefore, the Court found that Allegheny could not have directly provided plaintiffs with false or misleading information regarding the insurance policy and dismissed the case. *Id.*

Governor argues that it is in the same position as Allegheny as it is an independent insurance agency and not an insurance company. However, Governor's argument is not persuasive because the law is not focused on the "job title" of the party, but on the party's participation in the insurance policy and claims. Here, the case is distinct from *Ayers*. Unlike the plaintiffs in *Ayers*, plaintiff Miller in this instant case alleges direct communication between Governor and plaintiff. In the Amended Complaint, the plaintiff alleges Travelers and Governor "made representations to the Plaintiff during the application process that were consistent with the intentions she expressed in discussions about the specific insurance coverage that she would need to cover her *entire business*[.]" [Doc. 19, ¶ 11]. Plaintiff alleges she relied on these representations [*Id.* at ¶ 12]. After the fire, plaintiff alleges that representatives from Governor and Travelers met and discussed the policy and the fire together and that Governor's representative advised that the insurance was only for the detached building for Posh Pets' boarding part of the business [*Id.* at ¶ 19]. Since, the fire started in the grooming area of the business, attached to the house, the claim was denied. In short, plaintiff alleges she was led to believe that her insurance covered both the grooming and boarding sides of the business, but when she filed a claim she was told the insurance did not cover the grooming side. As such, plaintiff has set forth a plausible claim for relief under the UTPA.

In addition to the UTPA, Governor moves to dismiss the common law bad faith claim. In support, Governor cites a case that ruled that an employer that "simply

6

process[ed] claims for self-insured workers' compensation employers" was not in the "business of insurance" as required under the West Virginia tort of bad faith. *Wetzel v. Employers Serv. Corp. of West Virginia*, 221 W.Va. 610, 619, 656 S.E.2d 55, 64 (2007). Governor even concedes this case is not directly on point with the instant case. Viewing the allegations in the plaintiff's favor, Governor is different from the company in *Wetzel* because it did more than simply process claims for its employees. As mentioned above, Governor is alleged to have been involved directly with plaintiff before the issuance of the policy and afterwards in the denial of plaintiff's claim. Therefore, these allegations are sufficient to survive a motion to dismiss for both the UTPA and bad faith claims.

## CONCLUSION

In conclusion, this Court finds that defendant Governor's Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint **[Doc. 24]** is **DENIED**, and this matter may proceed.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

DATED: November **5**, 2018

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE